No. 2274.

## J. H. FOWLER *v.* THE STATE, EX REL. J. C. GEORGE.

1. QUO WARRANTO—DISTRICT ATTORNEY.—A proceeding by quo warranto may be filed by a district attorney pro tem. appointed during a term of court by the district judge on account of the non attendance of the district attorney. The authority of such an appointee to represent the State, after he has been recognized as a de facto officer, can not be questioned in a collateral proceeding.

2. PLEADING.—In a proceeding by quo warranto, to recover an office to which the relator claims to have been elected, an allegation that he was a citizen of the county and entitled to the office, is, on general demurrer, a sufficient averment of his qualification to hold the office.

3. SAME.—In such a proceeding a statement in the information that the relator received a majority of the ballots of the qualified voters of the county, is sufficient, without setting forth the facts which constituted their qualifications. A more definite allegation would, however, be required, if the relator should claim that ballots had not been counted, on the ground that the persons casting them lacked some of the qualifications named in the statute, when in fact they possessed them all, and that thereby the relator lost his election.

4. ELECTION LAWS.—The object of every popular election for office is to ascertain the will of the people as to who shall serve them. The laws enacted to secure this object, in so far as they require the election to be by ballot, the day of the election, and the places within designated precincts where the election shall be held, are mandatory. Other provisions prescribing the conduct of and return of an election are directory, and mere irregularities in their observance, which have not prevented the electors from exercising freely and fairly their right of suffrage, and from having their votes properly estimated for the candidates of their choice, must be treated as informalities which do not vitiate the election; *provided*, such irregularities are not of a character which the law declares shall vitiate an election.

5. SAME.—When irregularities occur in the conduct of the officers holding the election, it must be made to appear by those claiming benefit from the election, that such irregular conduct has not prevented an honest and fair election.

6. SAME.—Election returns can not be counted if the irregular way in which they have been transmitted has resulted in their being changed since they were made out by the officer; and ballots which have been tampered with by reason of a failure to secure and properly forward the ballot box can not be counted. If, however, the irregularities committed by the officer have in no way changed the result of the election, or its fair and honest character, the returns or ballots, as the case may require, will be corrected as readily as though the directory provisions of the law had been rigidly observed.

APPEAL from Nolan. Tried below before the Hon. William Kennedy.

The following conclusions of fact and of law were filed by the trial judge, viz:

1. That on the second day of November, 1886, upon the proper order of the Governor of the State, and of the county judge of Nolan county, Texas, there was holden in said Nolan county an election for State, county and precinct officers.

2. That there were duly appointed presiding officers to hold said election in the four precincts of said county, the county being divided into four precincts.

3. That the presiding officers appointed by the commissioners court of said county for precincts Nos. 3 and 4 failed and refused to act as such officers on the day of election, and that by a majority of the voters present at the time and place of holding said election, E. Hylton was elected presiding officer of precinct No. 3, and that C. Hattenbosh was elected presiding officer of precinct No. 4, in said county, and that they qualified as such for their respective precincts, respectively appointed judges and clerks of election in said precincts, who were duly qualified, and that those officers opened the polls and conducted said election at their respective voting precincts.

4. That at said election relator J. C. George and respondent J. H. Fowler, were candidates for the office of county treasurer of Nolan county.

5. That at said election there were polled two hundred and fifty-eight legal votes for the candidates for said office, and that relator received one hundred and thirty-eight of said votes, and respondent received one hundred and twenty of said votes—giving relator a majority of eighteen votes for said office.

6. That the commissioners court of Nolan county, on the ninth day of November, 1886, estimated the returns of said election and declared respondent J. H. Fowler, the duly elected county treasurer of Nolan county; and the county judge of said county issued on that day to respondent a certificate of election to said office, and that respondent has duly qualified as such.

6. That the office of county treasurer of Nolan county is of the value of six hundred dollars per annum.

To which findings of fact respondent excepts.

I also find, as a conclusion of law, that relator is entitled to the office of county treasurer of Nolan county, and that the

respondent is an intruder therein.   To which finding respondent
excepts.
    (Signed)                              WM. KENNEDY,
                              Judge Thirty-second District.

*Cowan & Fisher* and *J. F. Eidson*, for appellant:  On their
proposition that this proceeding could only be instituted by a
district or county attorney, and an appointment to the office of
district attorney pro tem. only confers upon the appointee a
right to such office, but before he can perform the duties of such
office he must take the oath and qualify as required by law, and
he must allege such appointment and qualification, as the judge
has not judicial knowledge of, at least, such qualification, they
cited General Laws, special session Sixteenth Legislature, chap-
ter 45, page 48; Constitution, article 16, section 1; Revised Stat-
utes, article 242; Code Criminal Procedure, article 39; Marnoch
v. State, 7 Court of Appeals, 270, 271; Flaton v. State, 56 Texas,
102, 103.
    On their proposition that election returns, when made out with
poll list and tally list in triplicate, certified to by proper officers,
and delivered to proper officers as required by law, and within
the time prescribed by law (and mere irregularities are cured by
proper allegations and proof aliunde), are prima facie evidence
of the result of such election, otherwise they are not evidence of
anything, they cited Owens v. State, ex rel. Jennett, 64 Texas,
505; McKinny v. O'Conner, 26 Texas, 10, 11, etc.; Arbery v. Bea-
vers, 55 American Decisions, 799; Wait's Actions and Defenses,
volume 5, pages 263, 264, 268, section 12.

*J. B. Scarborough,* for appellee, cited 1 Texas, 63; McKinny v.
O'Conner, 26 Texas, 5; Ex parte McCall, 2 Court of Appeals;
Wait's Actions and Defenses, volume 7, pages 7, 8, 9.

WILLIE, CHIEF JUSTICE.   Article 39 of the Code of Criminal
Procedure authorizes the district judge, whenever the district
and county attorneys fail to attend any term of the court, to
appoint some competent attorney to perform their duties during
such time.   Such appointee represents the State in all matters
in which it may be interested that may arise during the term.
The State is interested in a quo warranto proceeding like the
present, and its representative is named in the statute as the
proper person to file the information; and this information was

filed during the term of the court at which Chaffee was appointed, and during the absence of the district and county attorney. The above article does not require the appointee to give bond, as does article 244, which provides for an appointment by the Governor when the office becomes vacant. Moreover, Chaffee, who was made district attorney pro tem., in the absence of the regular attorney of the State, was recognized as such by the court, and as the proper officer to file this information, and he was at least a de facto district attorney, whose authority could not be attacked in this collateral manner.

The information alleged that George was a citizen of Nolan county and entitled to the office of county treasurer, and this was a sufficient averment as to his being qualified to hold it, at least as against a general demurrer.

The allegation that the relator received a majority of the ballots of the qualified voters of the county was sufficient, without setting forth the facts which constituted their qualifications. The statute enumerates what facts must exist in every case to qualify a person to vote for this office. Hence, to aver that a voter is qualified so to do is in effect to aver that he possesses all these qualifications.

More definite allegations might have been required if the relator had claimed that ballots had not been counted, on the ground that the persons casting them lacked some of the qualifications named in the statute, when in fact they possessed them all, and that thereby the relator lost his election; but this was not the case, no question of the kind having been raised.

As to all other objections to the pleading of the appellee, it is sufficient to say that, taken together, they show a perfect title to the office in controversy; and the exceptions which we have not noticed are not deemed of any importance, or are not sustained by the record. The objections to the admissibility of evidence and to the conclusious of law and of fact found by the court, are either disposed of in what we have already said or will be by what we shall say in determining the main and important question in the case. It is proper to add that any want of allegation in the informations as to the manner in which the election was conducted and the returns made, is fully supplied by the pleadings of the respondent, and evidence upon that subject thereby rendered admissible.

The important question is as to whether the court below erred in counting the ballots cast at precinct No. 3 for the respective

candidates for county treasurer, and in estimating them in determining who was legally elected to that office. The returns of precinct No. 4 are also brought in question, but whether they should have been corrected or not is unimportant, because they do not affect the result. If the votes of precinct No. 3 are to be estimated, the relator has received a majority and is entitled to the office, whether or not the returns of precinct No. 4 or the vote at that box is taken into consideration.

The only objections to box No. 3 which require attention are: 1. No tally sheets of the votes cast or poll list of the voters by whom they were cast were kept or returned by the presiding officer and managers of the election. 2. The election returns, which contained no more than a mere statement of the result of the voting, and the ballot box containing the tickets voted, were sent to the county judge and clerk through the United States mail, instead of by the presiding officer or any manager of the election. 3. Because the county judge did not receive the returns sent him. 4. Because the returns were not made in triplicate. 5. Because the box used at the election, and in which the returns were made to the county clerk, was not a proper one. 6. Because the managers of the election were not properly appointed and qualified.

As to the last objection it is sufficient to say that it was proved that the presiding officer appointed by the commissioners court refused to act as such, and the person who did preside was selected by the qualified voters assembled at the box on the day of the election, and took the oath required by law. Some of this proof was made after the argument had begun, but before it was entirely closed, by leave of the court, which course is authorized by the Revised Statutes, article 1298.

The statute requires that the box in which the votes are kept and returned shall be made of wood or metal, and securely fastened with nails, locks or screws. The one used at precinct number three was of wood and fastened with nails. It seems to have been secure; at least it safely preserved the election tickets, and was not tampered with. We do not think the use of such a box vitiated the election at this precinct. Without separately considering each of the objections raised to the manner of holding the election at precinct number three, and of returning its result, all such objections, including those we have already passed upon, may be disposed of on the ground that the requirements of the election law not obeyed by the managers,

were not mandatory, but directory. The statute does not say that a failure to pursue the course pointed out by it in these respects shall vitiate the election, nor is there anything in the nature of these provisions which requires us to give them that effect. The object of every popular election for officers is to ascertain the will of the people as to what persons shall serve them as such in the various positions to be filled. A free, fair and full expression of the public will is sought, and certain means are prescribed by law as the most certain to bring about the desired result. Some of these, from their very nature, or from the manner in which they are prescribed, are deemed absolutely essential to the accomplishment of the desired result. Among these may be named the requirement that the voting shall be by ballot; that it shall take place on a certain day, and within certain precincts, etc. These are prescribed to insure perfect freedom of choice to the citizen, to serve his convenience in getting to the polls, and to bring out a full vote at the election.

Then there are other requirements, such as those which have been neglected in this case, that are merely formal in their character. The law deems that it is proper that they should be pursued in order to prevent frauds in the election, and tampering with the votes and returns. If strictly followed, they furnish the best evidence that the election has been fairly conducted, and the burden of proof to show that it was not, either wholly or in part, rests upon the party attacking the returns. But these requirements are always treated as directory, unless the law, either expressly or in effect, makes them essential to the validity of the election. Electors must not be deprived of their votes on account of any technical objection to the manner in which the election has been held, or for any misconduct on the part of its presiding officers, if these have not affected the true result of the election. (Cooley's Constitutional Limitations, 617, 618; Prince v. Skillin, 71 Maine, 361.) This would be to deprive the citizen of a great constitutional privilege for a mere informality; to place it within the power of a few persons to defeat the right of suffrage altogether. The very means provided to insure a fair and proper election might become an instrument of fraud and dishonesty. Hence, all such irregularities of the officers in the conduct and return of the election as have not prevented the electors from a free and fair exercise of the right of suffrage, and from having their votes fairly estimated for the candidate of their choice, and which the law has not declared should set

aside their ballots, must be treated as informalities not vitiating the election. This principal is to be taken with the qualification that it must be made to appear that the neglect or misconduct of the officers has not, in the particular case, prevented an honest and fair election.

The returns must not be counted if the irregular way in which they have been transmitted has resulted in their being changed from what they were when made out by the officers. Ballots which have been tampered with by reason of a failure to secure or properly forward the ballot box, can not be counted. (Owens v. State, 65 Texas 500.) But when it is shown that the irregularities of the officers have in no manner changed the result of the election, or its fair and honest character, the acacknowledged rule is to correct the returns, or the ballots, as the case may demand, in the same way as if the directory provisions of the statute had been rigidly pursued.

These principles have been enforced when the statute required ballots to be sealed up in a package, then locked up in the ballot box, with the orifice at the top sealed, and ballots kept in a locked box with the orifice open have been allowed to be counted. (People v. Higgins, 3 Michigan, 233.) When the returns were required to be sealed and were not, in the absence of suspicion or fraud they were received. (McCrary on Elections, section 166.) When the returns were required to be sent by mail and they were sent by private conveyance, they were received and counted. (Id., 160.) Where the vote was fairly given, but no return at all was made as required by law, the vote was counted. (Id., 554.)

So, in our own State, all such provisions as those prescribed for the conduct and return of an election have been held directory, and elections held and returned in violation of them have been sustained. (Trueheart v. Addicks, 2 Texas, 217; McKinney v. O'Conner, 26 Texas, 5.)

It is true that our present statute says that election returns shall not be opened or estimated unless the same have been returned in accordance with its provisions (article 1706), but this applies to the opening and estimate provided for in the previous section to be made by the county judge. It does not prevent the district court from arriving at the true sense of the electors in a proceeding to test the title to an office. The county judge deals with returns only, but in a suit for the recovery of the office the district court may disregard any unimportant informality in

making them, or set them aside altogether when they do not speak the truth as to the state of the ballot. It follows, therefore, that as the ballots of precinct number three showed a sufficient majority for George to elect him, when taken in connection with the vote of the other precincts of Nolan county, the court did not err in according him the office of county treasurer, notwithstanding the irregularities in conducting and returning the result of the election, no fraud or tampering with the returns or ballots having been shown, and the judgment is affirmed.

*Affirmed.*

Opinion delivered January 18, 1887.