W. L. EASON, Appellant,

v.

O. B. ROBERTSON et al., Appellees.

No. 3342.

Court of Civil Appeals of Texas.

Waco.

March 1, 1956.

Rehearing Denied March 29, 1956.

W. L. Eason, Waco, for appellant.

Wiley W. Stem, Jr., City Atty., William A. Olson and O. V. Hall, Asst. City Attys., Bryan, Maxwell, Bryan & Wilson, Sleeper, Boynton, Darden & Burleson, Waco, for appellees.

TIREY, Justice.

This is an election contest growing out of a special election held in the City of Waco on the 27th of September, 1955, in

which two propositions were submitted to the voters of such City. The first proposition submitted was:

"Do you favor an ordinance authorizing sewer service charges?"

The second was:

"Do you favor an ordinance authorizing garbage and trash service charges?"

Thereafter, on October 4th, the Board of Commissioners canvassed and approved the returns, showing that the first proposition lost by one vote and the second proposition carried by 56 votes.

The first contest was filed on October 14th in the 74th Judicial District Court by Hon. W. L. Eason, and numbered 25812. The second contest was filed in the same court on October 18th by Oliver Winchell and seven others and numbered 25822, and the purpose of their contest was to have the eight votes of the contestants counted. They claimed they had cast their ballots with the County Clerk of McLennan County, Texas, and that the same had not been counted. During the trial of the second cause (which was tried first) appellant made a written motion to consolidate the above causes, but his motion was overruled and the court proceeded with the trial of the second cause, but denied appellant the right to participate therein. Appellant's pleadings in the second cause were stricken and he was denied the right to cross examine the witnesses or to take any action whatsoever in the trial of the second cause. After the evidence had been completed in Cause No. 25822, appellant made a second motion to consolidate and then by agreement of all parties the two contests were consolidated and it was agreed that the evidence that had already been introduced would remain a part of the record. Thereafter appellant filed answer to the contest of the eight contestants in Cause No. 25822. The trial was had without the aid of a jury and thereafter on the 8th of December 1955 the court entered its decree disposing of the consolidated causes and in the decree we find this recital:

"* * * and it appearing to the court that a special city election was called in the City of Waco, Texas, to be held on September 27, 1955, on the question of whether or not the ordinances theretofore adopted by the Board of Commissioners of the City of Waco, Texas, authorizing charges for sewer service and for garbage and trash service should become effective; that notice of said election was given and said election was held on the 27th day of September, 1955; that Contestants were each duly qualified resident electors of the City of Waco, Texas, and in all respects duly qualified to vote in said election; that each of said Contestants, in person, cast his or her ballot in said election in the time, form, and manner required by law at the Court House of McLennan County, Texas, before the County Clerk of said county who received the same; that the ballots cast by each of said Contestants were not opened, tallied, returned or counted in said election and were not made a part of the official returns of said election, and that each of said votes was a legal and valid vote; that the ballots of each of said contestants should be opened, counted and made a part of the returns of said election; that seven of said contestants, each of whom cast his or her absentee ballot in person at the Court House of McLennan County, Texas, before the County Clerk of said county who received the same, cast their absentee ballots in said election for the ordinance authorizing sewer service charges and for the ordinance authorizing garbage and trash service charges, and one of said contestants cast his or her vote against the ordinance authorizing sewer service charges and against the ordinance authorizing garbage and trash service charges; that the votes of contestants, as cast in said special election, should be added to the totals of the votes cast in said election.

"Whereupon it was by the Court announced from the bench that he would

enter an order adding seven (7) votes to the affirmative count on each of said propositions and to add one (1) vote to the negative count on each of said propositions. * * * .

"It is further ordered, adjudged and decreed by the Court that the votes cast for and against Proposition Number One in said election are as follows:

"For the ordinance authorizing sewer service charges ....3,886 votes

"Against the ordinance authorizing sewer service charges ......3,881 votes.

"It is further ordered, adjudged and decreed by the Court that the votes cast for and against Proposition Number Two in said election are as follows:

"For the ordinance authorizing garbage and trash service charges ...... 3,889 votes

"Against the ordinance authorizing garbage and trash service charges .......3,839 votes.

"It further appearing to the court on trial of said cause that two voters cast their vote in Precinct Number Seven which was outside the residence of said two voters, but it further appearing to the Court that without reference to whether or not such votes were for or against each of such propositions and it further appearing to the Court that whether such votes were legally or illegally cast such votes could not change the result of such election except as to the majority by which each of such propositions carried, the Court refused to open the ballot boxes to determine whether such votes were affirmative votes or negative votes on each of such propositions."

The court then decreed that said election resulted in a majority of five votes in favor of the ordinance authorizing sewer service charges, and that said election resulted in a majority of sixty votes in favor of the ordinance authorizing garbage and trash service charges, and further ordered that

a copy of the decree be certified to by the Clerk of the District Court and transmitted to the City Secretary of the City of Waco to be observed and followed by the City Secretary and by the governing body of the City of Waco, and the Court further decreed that the costs in Cause No. 25822, prior to the time of consolidation with Cause No. 25812, be taxed against the contestants Oliver Winchell et al., and that the costs in Cause No. 25812 and Cause No. 25822, after consolidation, be taxed against the contestant W. L. Eason, to which action Mr. Eason excepted and gave notice of appeal to this court. There is no complaint to the decree entered by the contestants in Cause No. 25822, styled Oliver Winchell et al. vs. City of Waco, nor by the City of Waco.

■ The court, pursuant to oral request, filed findings of fact and conclusions of law. The findings of fact so filed are in complete accord with the recitals in the judgment and support the judgment. Since the findings of fact are not in any wise challenged by appellant, we see no occasion to recite them. The cause was tried without the aid of a jury and we are bound by the following rule: "The rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings." See, Cavanaugh v. Davis, 149 Tex. 573, 235 S. W.2d 972, 977; Woodward v. Ortiz, 150 Tex. 75, 237 S.W.2d 286. See, also, cases collated under 4 Tex.Dig., Appeal & Error, ⊛1010(1). However, we have set out substantially the court's Conclusions of Law.

"Conclusions of Law

"1. That the eight absentee ballots were cast at the time and in the manner provided by law, and are legal ballots, and as such should be counted and included in the final returns of said election, there being no allegations or proof that any fraud or illegality was practiced in the casting of such ballots

or in the failure to count them in the original returns, or in the canvass thereof by the Board of Commissioners of the City of Waco, Texas.·

"See Art. 5.05 [V.A.T.S. ·Election Code], Vol. 9, Vernon's Ann.Civ.Stats., sub-divs. 4, 6, 7, 8 and 9, Wood v. State ex rel. Lee [133 Tex. 110], 126 S.W. 2d 4 [121 A.L.R. 931].

"That the Proposition Number 1:

" 'For the ordinance authorizing sewer service charges' received at such election ...... 3,886 legal votes; and,

" 'Against the ordinance authorizing sewer service charges' received at such election ...... 3,881 legal votes; and that—

"The Proposition 'for the ordinance authorizing sewer service charges' received five (5) more. votes than the proposition 'Against the Ordinance authorizing sewer service charges'.

"That the Proposition No. 2:

" 'For the ordinance authorizing garbage and trash service charges' received at such election 3,899 legal votes; and—

" 'Against the ordinance authorizing garbage and trash service charges' received at such election 3,839 ˙legal votes; and that the proposition 'For the ordinance authorizing garbage and trash service charges' received sixty (60) more votes than the proposition 'against the ordinance authorizing garbage and trash service charges.'

"3. I find that by the term 'except by a majority of the qualified voters of the City of Waco' as they appear in Sec. 36 of the Charter˙ of the City of Waco, Texas, is meant a majority of all the legal votes cast at an election by those persons qualified to vote for or against each proposition submitted.

"See: Art. 8.21, Vol. 9, Vernon's Texas Ann.Civil Stats.; Art. 8.18, Vol. 9, Vernon's Texas Ann.Civil Stats.;

Alley v. Denson, 8 Tex. 297; Bradshaw v. Marmion [Tex.Civ.App.], 188 S.W. 973, no writ history; [Board of Sup'rs] Carroll County v. Smith [111 U.S. 556], 4 S.Ct. 539 [28 L.Ed. 517]; Ewing v. Duncan, 81 Tex. 230 [16 S. W. 1000]; Hopkins v. City of Duluth, 81 Minn. 189 [83 N.W. 536]; Itasca Ind. Sch. Dist. v. McElroy [103 Tex. 64], 123 S.W. 117; Ladd v. Yett [Tex. Civ.App.], 273 S.W. 1006 (writ dis.); Marsden v. Troy [Tex.Civ.App.], 189 S.W. 960 (reh[earing] den[ied]) (no writ history); Shaw ˑv. Linds[l]ey [Tex.Civ.App.], 195 S.W. 338 (reh-[earing] den[ied]); State ex rel. [Rea] v. Etheridge [Tex.Civ.App.], 20 S.W.2d 808, rev[ersed] on other grounds [Tex.Com.App.], 32 S.W.2d 828;

"4. The fact that W. H. McCullough did not reside in voting Precinct or Ward 7 is an irregularity which is not a sufficient ground, standing alone, to invalidate all the votes in said voting precinct, and even though he did not possess all the legal qualifications, he acted under color of authority, there being no evidence that he did not fairly and impartially discharge his duties, or that he was guilty of fraud, or that his service constituted an obstacle to a fair and free expression of the˙ will of the electors voting in said voting precinct.

"See: Art. 1.01, Vol. 9, Vernon's Ann.Civ.Stats.; Art. 3.03, Vol. 9, Vernon's Ann.Civ.Stats.; Davis v. Blakel[e]y [Tex.Civ.App.], 208 S.W. 2d 908 (no writ history); Davis v. Harper [17 Tex.Civ.App. 88], 42 S.W. 788 (writ . dis[missed]); Gayle v. Alexander [Tex.Civ.App.], 75 S.W.2d [706] 708 (no writ history); Hill v. Smithville Ind. Sch. Dist. [Tex.Com. App., 251 S.W.2d 209]; Bell v. Faulkner [Tex.Sup.] 19 S.W. 480 (S.Ct.); Oxley v. Allen [49 Tex.Civ.App. 90], 107 .S.W. 945 (no writ history); State ex rel. Paggi v. Fletcher [Tex.Civ. App.], 50 S.W.2d 450 (writ dis[miss-

ed]); Fowler v. State [68 Tex. 30], 3 S.W. 255.

"5. The fact that Eldona Wilson did not reside in voting Precinct or Ward 7 is a mere irregularity which is not sufficient ground, standing alone, to invalidate all the votes in such voting precinct or ward, and even though she did not possess all the legal qualifications, she acted under color of authority, there being no evidence that she did not fairly and impartially discharge her duties, or that she was guilty of fraud, or that her service constituted an obstacle to a fair and free expression of the will of the electors in said voting precincts.

"See: Authorities in support of Conclusion of Law No. 4.

"6. The fact that Bryant Stubblefield was not continuously present at the polling place in Precinct or Ward 7, on the 27th day of September, 1955, and that in his absence his duties were performed by W. H. McCullough, is a mere irregularity which is not sufficient, standing alone, to invalidate all the votes cast in such voting precinct or ward, there being no evidence that his absence resulted in any improper conduct in the holding of such election, or that any fraud resulted in or from his absence, or that his absence constituted an obstacle to a fair and free expression of the will of the electors in said voting precinct.

"See: Authorities in support of Conclusion of Law No. 4.

"7. The votes of W. S. Powers and wife, who were not residents of voting Precinct or Ward 7, having been cast in a precinct other than that of their residence, were illegal votes, but such fact is immaterial because the voiding of such votes would not materially affect the results of such election.

"See: Altgelt v. Calla[g]han [Tex. Civ.App.], 144 S.W. [1166], er[ror] dis[missed]; De La Garza v. Salinas [Tex.Civ.App.] 255 S.W.2d 396 (no writ history); DuBose v. Ainsworth [Tex.Civ.App., 139 S.W. [307] (er[ror] dis[missed]); Marks v. Jackson [Tex.Civ.App.] 130 S.W.2d [925] 927 (no writ history); Roberts v. Hall [Tex.Civ.App.] 167 S.W.2d [621] (no writ history).

"8. The fact that only two persons counted the ballots and kept the tally sheets, and that one tally sheet was copied from the two was a mere irregularity which, standing alone, is not a sufficient ground to invalidate all the votes in said voting precinct, in the absence of evidence that the votes were erroneously counted or copied or that fraud or irregularity resulted from such conduct, or that such conduct of the two persons constituted an obstacle to a fair and free expression of the will of the electors voting in said voting precinct.

"See: Authorities under Conclusion of Law No. 4."

See, also, Arts. 7.13 and 9.31, Vernon's Ann.Civ.Stats.; Austin v. City of Alice, Tex.Civ.App., 193 S.W.2d 290 (error refused n. r. e.); Bray v. Peden, Tex.Civ. App., 213 S.W.2d 469 (no writ history); Cramer v. Sheppard, 140 Tex. 271, 167 S.W.2d 147; Fugate v. Johnston, Tex.Civ. App., 251 S.W.2d 792 (no writ history); Lee v. Whitehead, Tex.Civ.App., 182 S.W. 2d 744 (no writ history); McBride v. Cantu, Tex.Civ.App., 143 S.W.2d 126 (no writ history); Morris v. Dunn, Tex.Civ. App., 164 S.W.2d 562 (no writ history); Sanchez v. Bravo, Tex.Civ.App., 251 S.W. 2d 935 (no writ history); Stratton v. Hall, Tex.Civ.App., 90 S.W.2d 865 (no writ history); Thomas v. Groebl, 147 Tex. 70, 212 S.W.2d 625; Vol. 15B Tex.Jur. Sec. 7, p. 363, and Vol. 39, Tex.Jur. Sec. 91, p. 172.

Appellant assails the judgment on what he designates as six points: (1) the trial court erred in counting the absentee votes of the eight contestants; (2 and 4) that neither proposition received a majority of the qualified voters of the City of Waco, nor did either proposition receive a majority of the votes cast at the election and

therefore both propositions lost; (3) the court erred in his conclusions of law in holding as follows: "I find that by the term 'except by a majority of the qualified voters of the City of Waco' as they appear in Sec. 36 of the Charter of the City of Waco, Texas, is meant a majority of all the legal votes cast at an election by those persons qualified to vote for or against each proposition submitted"; (5) the court erred in his third conclusion of law where he said: "I find that by the term 'except by a majority of the qualified voters of the City of Waco' as they appear in Sec. 36 of the Charter of the City of Waco, Texas, is meant a majority of all the legal votes cast at an election by those persons qualified to vote for or against each proposition submitted;" and (6) the court erred in failing to throw out the votes in Ward 7.

As we understand appellant's brief, his major contention is that the trial court erred in counting the absentee votes of the eight contestants, namely, Oliver Winchell, George M. Walter, Mildred S. Walter, W. Earl Harrison, Lucien B. Willoughby, E. C. Houck, Bill H. Dennis and Wilford R. Woodward, because none of the contestants complied with the absentee law in force and effect at the time that they did so attempt to vote absentee and by virtue thereof the absentee vote cast by each of said contestants was illegal and void and should not have been counted. In attempting to support the contention he reviews the various acts of the legislature dealing with absentee voting, beginning with the First Called Session of the 35th Leg., Chap. 40, pp. 62 and 63, generally known as the Acts of 1917. The Act as it now exists on our statute books was passed by the 44th Leg., Reg.Session, Chap. 105, p. 700, and generally known as the Acts of 1935, and became effective May 17, 1935. As we understand appellant's position here, it is to the effect that under the provisions of the present statute as amended that such statute should be construed to hold that it limits electors or voters who may vote absentee to voters who are actually absent on election day and does not permit absentee voting by electors or voters who merely expect to be absent.

He argues under the express provisions of the statute that if a voter expects to be absent on election day and complies with the absentee voting statute so as to cause his vote to be cast as an absentee vote on election day, such vote, if so cast, will be illegal and should not be counted unless such voter is actually absent on such election day. That exact question was before our Supreme Court in Wood v. State, 133 Tex. 110, 126 S.W.2d 4, 121 A.L.R. 931, and the Supreme Court held adversely to appellant's contention.

Appellant in his brief and in oral argument before us on submission further contended and stated in effect that if a person desired to comply with the law governing absentee voting that it would be necessary for him to go outside of the county or state and make application by letter written outside of the county or state to the County Clerk of his county to the effect that he was out of the county or state and that he would be absent on election day and ask the Clerk to forward him the necessary papers so that he could file an absentee ballot, and in the event the voter's situation changed and he was in the county on election day that the vote cast by him as an absentee voter would be illegal and void. It is our view that appellant's contention in this respect is without merit and an unreasonable interpretation to be placed upon the absentee voting law, and further we think it is condemned by the holding of our Supreme Court in Wood v. State, supra.

Our Supreme Court in discussing the absentee voting law and its amendments said:

"The Court of Civil Appeals very forcibly reasons that since the Legislature has seen fit, by amendment, to change the phrase 'expects to be absent' to the phrase 'is absent', effect should be given to such change. In our opinion, the present statute should be given the same construction, as regards the matter under discussion, as the several statutes which existed prior to the time the phrase 'expects to be absent' was eliminated, and the phrase 'is absent' substituted: We reach this con-

clusion for two main reasons: (a) Because to give the statute the construction that though the voter expects to be absent, still if he is not actually absent, his vote should not be counted, leads to results that are unreasonable, and makes the law largely impracticable and unworkable; and (b) because in our opinion such a construction contradicts the Act when read as a whole.

*"It is the settled law that statutes should be construed so as to carry out the legislative intent, and when such intent is once ascertained, it should be given effect, even though the literal meaning of the words used therein is not followed. Also, statutes should never be given a construction that leads to uncertainty, injustice, or confusion, if it is possible to construe them otherwise. * * * If this Act be given the construction that intent or expectation of the voter does not govern, then utter confusion and uncertainty must exist in holding all elections. Election officers will be put to the duty of ascertaining whether or not electors whose absentee ballots have been transmitted to them in the proper way are, in fact, actually absent, before such officers will be justified in counting such ballots. At least, such election officers will be put to such duty in case such ballots are challenged on that ground. Such a duty would call on election officers to try and determine fact cases in numerous instances. Furthermore, to construe this statute to mean that the voter who expects to be absent must actually be absent on election day, would lead to much litigation and many election contests. Every absentee vote would be subject to much uncertainty, and every election contest would involve the issue of finding out whether or not each absentee voter was, in fact, absent on election day, and this though the voter should otherwise be duly qualified. We think that a construction that leads to such confusion should not be indulged in, unless there is no escape therefrom."*

 The statement of the rule here made by our Supreme Court has not been changed by it. The reasons for the rule assigned by our Supreme Court are clear and sound and they reflect much study and consideration and are in keeping with our democratic theory of government, by the people and for the people. Needless to say that under our system of jurisprudence, our court is duty bound to follow the interpretation given to our statutory law by our Supreme Court, and it follows that appellant's contention herein must fail.

The trial court in the preparation of his Conclusions of Law filed a list of authorities supporting each of his conclusions. We have examined them very carefully and we are in complete accord with the trial court's Conclusions of Law and such conclusions are supported by the authorities there cited, and they hold adversely to each and all of the contentions made by appellant. Since each and all of appellant's points have been decided adversely to his contentions here made by the Texas courts, it would serve no useful purpose to discuss appellant's other points raised, and each of them is overruled.

It follows from what we have said that it is the view of this court that there is no merit in appellant's appeal and that the judgment of the trial court should be in all things affirmed. Accordingly, the judgment of the trial court is affirmed.