HOOKER et al. v. FOSTER et al.   (No. 9307.)

Court of Civil Appeals of Texas.   Galveston.
June 29, 1929.

T. P. Buffington, of Anderson, for appellants.

Haynes Shannon, of Navasota, for appellees.

LANE, J. This is a suit brought by S. E. Hooker, B. C. Thomas, C. F. Rea, L. S. Mooring, and L. M. Norman, resident taxpaying voters in Shiro independent school district of Grimes county, Texas, against Guy Foster, Walter Hoke, George W. Leonard, H. L. Sandel, G. C. Davis, and J. H. Davis, trustees of said school district, to contest an election held in said district on the 28th day of September, 1926, to determine whether or not a tax in addition to that already levied should be levied for school purposes. The grounds of contest urged by contestants are:

First. "The petition presented to the board of trustees of the Shiro independent school district for said election was not signed by the legal number of property tax paying voters of said Shiro independent school district."

Second. "Said petition did not describe properly the bounds of the district and the lands on which the tax was sought to be levied."

Third. "In the fixing of said district and in the ordering of said election contestants had no voice or legal method of restraining such election, same being contrary to the Constitution of the state of Texas and of the United States."

Fourth. "Because the notice for said election was not posted for the length of time required by law."

Fifth. "Because the notices did not sufficiently identify the tax and the purpose of the tax to be voted on, nor the bounds of the district, so as to determine who might vote at such election."

Sixth. "Because no return of such election was made as was required by law, nor officers appointed as required by law to hold such election."

Seventh. "Because the officers holding the election were disqualified from holding such election."

Eighth. "Because the ballots cast at such election were not official ballots, nor did they have written upon them the words required by law, and said ballots were counted in said election, notwithstanding that such illegal ballots appeared before the purported officers holding such election, to the number of 10, same being in favor of the tax and so counted by said purported officers, when in fact, if such ballots had not been counted, the result would have been against the tax."

Ninth. "Because Guy Foster and Mrs. Ruby Foster were permitted to vote by mail at such election, and to vote while absent from the Shiro independent school district during the date when said election was held as herein stated; both voting by letter or order, and that said votes were counted by the alleged officers of election, and were included in the returns of said election; both of said votes being in favor of the tax, and were so counted in favor of the tax. Should said illegal votes not have been counted, the result would have been against the tax."

Tenth. "Because Mrs. Fannie Fuqua was permitted to vote at such election by the illegal officers thereof, and that her vote was cast in favor of the tax, when said vote was illegally cast and counted, the said Mrs. Fannie Fuqua not having paid her poll tax for the year 1925. That said vote was cast and counted in favor of the tax, and that, should same not be counted, the result would have been against the tax."

Contestees replied to the contestants' petition by general demurrer, general denial, and allege affirmatively that the election contest-

ed was in all respects held in conformity to law; that the returns of the same were made as provided by law; that Guy Foster and his wife, whose votes were challenged, and all other absentee voters whose ballots were cast at the election, were cast in strict conformity to law; and that Mrs. Fannie Fuqua was a qualified taxpaying voter in the district and was entitled to vote at the election.

The undisputed facts show the returns of the election, and such returns show that 66 votes were cast for the tax and 65 were cast against it; that while Guy Foster was, at the time the election was held, a resident taxpaying voter in the school district and president of the school board, he and his wife, Mrs. Ruby Foster, were temporarily in the city of Houston, in Harris county, Texas; that some time prior to the election they obtained official ballots from the secretary of the board of trustees of the school district; that they made the affidavits as required by law for absentee voting; that they prepared their ballots as provided by law, and mailed them to the secretary of the board of trustees of the school district; that the secretary delivered such ballots to the judges of the election, and they were voted as absentee ballots at the election and duly counted; that the vote of Guy Foster was voted and counted for the tax. As to how the ballot of Mrs. Foster was voted and counted, it is not shown.

There was no attack made on the vote of Mrs. Fuqua, so far as the statement of facts shows; nor is it shown that any attack was made upon the regularity of the holding of the election and the returns made thereof, except as to the vote cast by Guy Foster, and the controversy on appeal is confined solely to the question of the validity of the ballot cast by him, which is conceded to have been cast for the tax, it being also conceded that, had such ballot not been counted, the tax levy would have been defeated.

The court tried the case without a jury and rendered judgment, in which it is recited that the election resulted in favor of the levy of the tax, that there were cast 66 *legal* votes for the tax and 65 against it, and that the court judicially determined, ascertained, and declared that the true result of the election was in favor of the tax. The plaintiffs have appealed, and are asking this court to hold that the vote of Guy Foster was unlawfully cast and counted for the tax levy, and to reverse the judgment and remand the cause for another hearing.

They contend that as, by article 2956, Revised Statutes of 1925, it is provided that an absentee voter may cast his ballot at an election by going before a notary public at a time not less than 10 nor more than 20 days before the date of the election and make a certain affidavit, attach his poll tax receipt, and send it to the county clerk, etc., and it being shown by the undisputed evidence that the ballot of Guy Foster was not sent to the county clerk and by him delivered to the election officer, but, on the contrary, it was sent to the secretary of the board of trustees and by him to such election officer, therefore such ballot should have been declared by the court to be an illegal ballot, and the election set aside, and the court erred in not so declaring and in not setting aside the election.

Appellants admit that there is but one question to be determined, and that is: Can the ballot of a legally qualified voter, who is absent from the county, precinct, or district in which the election is being held, be legally cast, unless the provisions of article 2956 relative to absentee voting is fully complied with?

Appellees, on the other hand, contend that, since it was shown that Guy Foster was a qualified taxpaying voter in the precinct and district where the election was held, that he secured the official ballot, and that he prepared his ballot before a notary public in manner and form as required by law, the mere fact that he mailed it to the secretary of the board of trustees, who in turn delivered it to the officers in charge of the election, who deposited it in the election boxes as the vote of Foster, instead of transmitting it to the election officers through the county clerk, as provided by article 2956, did not render the vote of Foster illegal. They further contend that article 3018, Revised Statutes of 1925, designates what ballots shall not be counted, and that ballots such as the one cast and counted as the vote of Guy Foster in this case is not one so designated; that it has been held by the courts of this state that, where a ballot is cast by a qualified voter, it should be counted, unless some law provides that it should not be counted. They cite in support of such contention Ladd v. Yett (Tex. Civ. App.) 273 S. W. 1006; Wright v. Marquis (Tex. Civ. App.) 255 S. W. 637; Kulp v. Railey, 99 Tex. 310, 89 S. W. 957; McKinney v. O'Connor, 26 Tex. 5; Hillman v. Kuykendall (Tex. Civ. App.) 223 S. W. 242; Mecaskey v. Ratliff (Tex. Civ. App.) 159 S. W. 115; Stubbs v. Moursund (Tex. Civ. App.) 222 S. W. 632, 634, and other cases.

We have examined the authorities cited, and we think they sustain appellees' contention. It seems to be well settled that, where the manner in which the votes cast at an election were returned to the proper custodian thereof was irregular, but there was no showing of fraud, or that the returns were changed or tampered with, such votes should be counted; that if the will and desire of the voter can be ascertained from the ballot, and there is no law prohibiting the counting of such ballot, the ballot should be counted. In Stubbs v. Moursund, supra, it is said: "There is no statutory law which prohibits a mutilated ballot from being counted, and the general trend of decisions in this respect is to hold that, if the intent of the voter can be ascertained by the ballot cast, in the light of the surrounding circumstances, effect should

be given to the ballot in accordance with such intent."

By article 3143, Revised Statutes of 1925, which is one of the provisions of title 50 of such Statutes relative to elections, it is provided as follows: "No immaterial error made by any officer of a primary election, or any immaterial violation of the primary election laws by an elector, shall vitiate any election held under this title, nor be the cause of throwing out the vote of any election precinct."

The only contention here made for the setting aside of the election is that the vote of Guy Foster was irregularly returned to the proper custodian thereof. There was neither pleading nor evidence tending to show fraud in the casting or counting of the vote, or that the returns of the election were tampered with, or in any manner tampered with. We think appellant has failed to show any reason for the reversal of the judgment; therefore the same is affirmed.

Affirmed.